COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-349-CR

NO. 2-05-350-CR

NO. 2-05-351-CR

LINDA RENEA SMITH APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

A jury convicted Appellant Linda Renea Smith of two counts of possession of a controlled substance (methamphetamine) with intent to deliver and one count of possession of a controlled substance (psilocin) with intent to deliver.  The jury assessed Appellant’s punishment on each methamphetamine count at ten years’ confinement and on the psilocin count at five years’ confinement.  The trial court sentenced her accordingly.

Appellant does not challenge her convictions arising out of the events of December 2004.  But in four points concerning her remaining conviction of possession of a controlled substance (methamphetamine) with intent to deliver, arising out of the January 2004 events, she contends that the evidence is legally and factually insufficient to support the conviction and that the trial court deprived her of a opportunity to present a complete defense.  In four additional points complaining of punishment in the three cases, she contends that the trial court abused its discretion by admitting extraneous offense evidence and medical records and erroneously failed to submit an extraneous offense jury instruction.  Because we hold that the evidence is sufficient to support the challenged conviction and that the trial court did not reversibly err, we affirm the trial court’s judgments.

The January 2004 Offense

In her first two points, Appellant contends that the evidence is legally and factually insufficient to support her conviction for possession of  methamphetamine with intent to deliver on or about January 20, 2004.  Specifically, she argues that merely being in proximity to the drugs and/or having knowledge of them does not sufficiently show possession.  She relies on evidence from defense witnesses that she did not live in the house in which the drugs were found, that the bedroom in which she and the drugs were found was not hers, and that other people had access to the room.  She also relies on the absence of evidence tying her to the female clothes found in the room and the other items located in the bag in which the drugs were discovered, as well as the absence of evidence that a large amount of cash was recovered, that she smelled of the residual odor of the contraband, that she attempted to flee, and that she made any incriminating statements.  The evidence shows the following:

During the police investigation of Christopher Lloyd, Lloyd told Officer Martin that Appellant had drugs in a lockbox in her bedroom in his house.  When Officer Martin entered the house, Appellant and her boyfriend Mark Chavez were in the bedroom.  Appellant and Chavez told Officer Martin that they had shared the room for about one month without paying rent.  Officer Martin said that Appellant orally consented to his search of the room and that she retrieved the lockbox from beside the bed when he asked her about it.  She retrieved the key for the locked lockbox as well.  The lockbox contained a loaded handgun, glass pipes, snorting tubes, many small baggies, finger scales, marijuana, roaches, and butane fuel.  Appellant admitted to Officer Martin that the handgun was hers.  When Officer Martin asked Appellant about the methamphetamine that Lloyd had reported was inside her lockbox, she told him that Chavez had put the drugs underneath a pillow on the bed in the bedroom when the police arrived but before they entered the bedroom.  Underneath the pillow, the officers found a small black bag containing eight baggies of methamphetamine.  The total weight of the methamphetamine was later determined to be more than thirty-six grams.  Chavez testified that Appellant usually kept her lockbox with her and that she was the only person with access to it, as far as he knew.  He also testified that he had not moved the drugs from the lockbox to the pillow.  Scales were also located in the bedroom.  The jury charge did not contain a charge on the law of parties.

Based on the applicable standards of review,
(footnote: 2) we hold that the evidence is legally and factually sufficient to link Appellant to possession of the methamphetamine and to support her conviction for possession of the methamphetamine with intent to deliver.  We overrule her first and second points.

In her seventh and eighth points, Appellant contends that the trial court deprived her of an opportunity to present a complete defense, violating her rights to due process and to confront the witnesses against her.  Specifically, Appellant contends that the trial court barred her from putting on evidence implicating Christopher Lloyd and the other occupants of the home on that January 2004 day when Appellant was arrested.  
Appellant did not make an offer of proof concerning any of the excluded evidence.  She therefore has failed to preserve error.
(footnote: 3)  
We overrule Appellant’s seventh and eighth points.
 

Punishment Issues

In her third point, Appellant contends that the trial court abused its discretion by admitting extraneous offense evidence through State’s witness Patricia Hill that was more prejudicial than probative.  Specifically, Appellant contends that Hill should not have been allowed to testify about Appellant’s drug use during her pregnancy, her noncompliance with the service plan, and the eventual termination of her parental rights.  Because Appellant was seeking a probated sentence from the jury, we agree with the State that this evidence was relevant.  Further, we cannot conclude that the danger of its unfair prejudice substantially outweighed its probative value.
(footnote: 4)  Consequently, we overrule Appellant’s third point.

The State concedes Appellant’s fourth point, in which she contends that the trial court erred by omitting from the punishment jury charge an instruction not to consider the extraneous offense evidence unless it was proved beyond a reasonable doubt.
(footnote: 5)  The State does not, however, concede harm.

Because Appellant did not object to the omission of the instruction, we must decide whether the error was so egregious and created such harm that Appellant did not have a fair and impartial trial—in short, that “egregious harm” has occurred.
(footnote: 6)  In making this determination, “the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.”
(footnote: 7)  
The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused.
(footnote: 8) 
 Egregious harm is difficult to prove and must be determined on a case-by-case basis.
(footnote: 9)  Given the evidence of Appellant’s guilt of the three charged offenses, her long history with drugs, other instances in which she failed to comply with a trial court’s orders, the lack of contrary evidence regarding her ability to follow a trial court’s orders, and the relatively light sentences she received in contrast to the maximum sentences she faced, we cannot say that egregious harm occurred.  We overrule Appellant’s fourth point.

In her sixth point, Appellant contends that the trial court erroneously admitted State’s exhibit 43 over her hearsay objection.  Exhibit 43 contains medical records of Appellant and her daughter that were compiled at or near the time of the child’s birth.  The records were admitted based on a business records affidavit.  Appellant objected that the records should not be admitted absent verifying testimony from a medical professional or other qualified expert who would be subject to cross-examination.  We conclude that Appellant did not raise a hearsay objection at trial.  Because her objection at trial does not comport with her sixth point, we overrule Appellant’s sixth point.
(footnote: 10)
 In her fifth point, Appellant contends that the 
trial court erroneously admitted State’s exhibit 43 over her 
Crawford
(footnote: 11) objection.  Appellant concedes that “[t]rial counsel specifically raised his 
Crawford
 concern in light of the medical and lab reports or diagnos[e]s that were contained in the records and because Appellant would be deprived cross-examination on the accuracy of those results,” and our review of the record confirms that Appellant’s objection was so tailored.  Appellant’s complaints on appeal about “statements and actions relating to the TDPRS investigation and the hospital’s assistance in the process, as well as statements relayed to hospital personnel by third parties (including TDPRS and the district attorney’s office)” were therefore not preserved by an objection to the trial court.
(footnote: 12)  Further, Appellant’s complaint regarding the medical reports, lab reports, and diagnoses is not adequately preserved because Appellant does not point to specific damaging information on each specific page and explain why it is both objectionable and harmful.
(footnote: 13)  She instead points us to several unnumbered pages in the original exhibit that were apparently turned down at the corners at trial (but are no longer turned down).  In the interest of justice, we nevertheless note that the harmful information about Appellant being on drugs at the time she was admitted for labor and delivery and the child being born with drugs in her system properly came in elsewhere.  Consequently, we overrule Appellant’s fifth point.

Conclusion

Having overruled all of Appellant’s points, we affirm the trial court’s judgments.

PER CURIAM

PANEL F: DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  October 5, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
See Jackson v. Virginia, 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001); 
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000) (all providing legal sufficiency standard of review); 
see Zuniga v. State
, 144 S.W.3d 477, 481-82, 484-87 (Tex. Crim. App. 2004); 
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003); 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997) (all providing factual sufficiency standard of review); 
see also Poindexter v. State
, 153 S.W.3d 402, 405-06 (Tex. Crim. App. 2005) (providing “affirmative links” rule).

3:
See
 
Tex. R. Evid. 
103(a)(2), (b); 
Tex. R. App. P.
 33.2; 
Fairow v. State
, 943 S.W.2d 895, 897 n.2 (Tex. Crim. App. 1997); 
Chambers v. State
, 866 S.W.2d 9, 27 (Tex. Crim. App. 1993), 
cert. denied
, 511 U.S. 1100 (1994); 
Love v. State
, 861 S.W.2d 899, 901 (Tex. Crim. App. 1993).

4:
See
 
Tex. Code Crim. Proc. Ann.
 art. 37.07, § 3(a) (Vernon Supp. 2006);

Tex. R. Evid.
 403; 
Erazo v. State
, 144 S.W.3d 487, 491 (Tex. Crim. App. 2004); 
Rogers v. State
, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999).

5:
See 
Tex. Code Crim. Proc. Ann.
 art. 36.14 (Vernon Supp. 2006); 
Huizar v. State
, 12 S.W.3d 479, 483-84 (Tex. Crim. App. 2000).

6:
Almanza v. State
, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh’g);
 see 
Tex. Code Crim. Proc. Ann
. art. 36.19 (Vernon 1981); 
Hutch v. State
, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

7:
Almanza
, 686 S.W.2d at 171; 
see generally Hutch
, 922 S.W.2d at 172-74.

8:
Almanza
, 686 S.W.2d at 174.

9:
Ellison v. State
, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); 
Hutch
, 922 S.W.2d at 171.

10:
See
 
Tex. R. App. P.
 33.1(a)(1)(A); 
Mosley v. State
, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied
,
 
526 U.S. 1070 (1999); 
Bell v. State
, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), 
cert. denied
, 522 U.S. 827 (1997).

11:
Crawford v. Washington
, 541 U.S. 36, 124 S. Ct. 1354 (2004).

12:
See
 
Tex. R. App. P.
 33.1(a)(1)(A); 
Mosley
, 983 S.W.2d at 265; 
Bell
, 938 S.W.2d at 54; 
see also
 
Human v. State
, 749 S.W.2d 832, 838 (Tex. Crim. App. 1988); 
Beltran v. State
, 728 S.W.2d 382, 387 (Tex. Crim. App. 1987)
.

13:
See Human
, 749 S.W.2d at 838 
(holding that when part of the offered evidence is admissible and part is not, the objecting party must specifically point out which part is inadmissible).